## WALKER, EVANS & COGSWELL v. BOLLMANN BROS.

1. A complaint by subsequent creditors attacking as fraudulent a prior mortgage, should not be dismissed as insufficient. A prior deed of a debtor may under some circumstances be assailed by a subsequent creditor with notice.

2. Where a deed or other instrument has been executed by one not in debt at the time, and the deed is founded upon a sufficient consideration, it is invulnerable as to subsequent creditors with notice, as well as to all others.

3. Before a subsequent creditor can attack a settlement or transfer of a party made when not indebted, he must show that the same was voluntary and was made with reference to future indebtedness, or prove circumstances of fraud other than what arises from its being voluntary.

4. When a Circuit judge in a chancery case has not indicated upon what findings of fact he bases his conclusion of law, this court must pass upon the facts as original questions.

5. A bond and mortgage executed between parties closely connected, *held*, not to have been without consideration, or given with a view to future indebtedness, or attended by circumstances showing fraud upon subsequent creditors, notwithstanding some suspicious conduct between the parties at or about the same time. MR. JUSTICE McGOWAN *dissenting*.

6. The bond and mortgage being good, plaintiffs cannot attack its subsequent assignment by the mortgagee as collateral security for a debt due by her, or raise any question as to whether the debt so collaterally secured has been paid, both mortgagee and assignee being before the court.

7. Where the plaintiff fails to appeal from a finding of fact in a decree which gives him the relief he asks, he is concluded by such finding.

8. Where plaintiffs allege in their complaint that property of S. has been fraudulently disposed of by mortgage, the question whether such property is in the hands of S., only as agent of H., cannot be considered.

Before COTHRAN, J., Marion, April, 1884.

This was an action by Walker, Evans & Cogswell, H. K. & F. B. Thurber & Co., and others, judgment creditors of A. Schafer, against Bollmann Bros., H. Sternberger, L. Sternberger, and A. Schafer, trading under the firm name of A. Schafer, E. Iseman, and E. Sternberger. The opinion states the case. The Circuit decree was as follows:

The plaintiffs, to maintain the issues on their part, offered in evidence:

1. The judgments obtained by them in the court of trial justice; the transcripts of the same filed in the clerk's office; and the returns of *nulla bona*, made by the sheriff on the executions.

2. The proceedings before the referee supplementary to the executions, including Judge Hudson's order of February 2, 1884.

3. The certified examination under said order, taken in writing, of A. Schafer, H. Sternberger, B. Bollmann, and E. Iseman, with numerous exhibits, including the mercantile books of A. Schafer, the bond and mortgage of A. Schafer to H. Sternberger, of November 8, 1881; the three notes of Lizzie Sternberger to Bollmann Bros., aggregating $4,500; the accounts current severally of Bollmann Bros. with A. Schafer and Lizzie Sternberger, and the proceedings before trial justice Evans, resulting in judgments in favor of E. W. Percival and Boykin, Carmer & Co. *vs.* A. Schafer and Lizzie Sternberger sued jointly.

4. The order dated February 23, 1884, made at chambers on the motion to appoint a receiver. The defendants' counsel objected to the introduction of the evidence taken in writing before the referee in supplementary proceedings, upon the grounds: (1) that that is an independent proceeding; and (2) that the parties who testified there being present or procurable, the evidence proposed is not the highest evidence. The objection was sustained. The plaintiffs' counsel were not disposed to risk their case upon the testimony of adverse witnesses and declined to put the defendants upon the stand, but claimed the right, as they are all parties to this suit, to prove by the referee and others, who were present at the examination, the declarations there made by them. I held that this could be done; and to this ruling the defendants by their counsel duly excepted.

A. Q. McDuffie, Esq., the referee, was then sworn, and testified as follows: "I saw H. Sternberger sign this paper" (testimony taken upon the examination). "It was read over to him before he signed it." "Behrend Bollmann also appeared before me and testified as a witness, I took down his testimony, certified it, and believe that" (referring to the written testimony) "to be what he said."

33

*X by Mr. Harllee:* "A good deal of what he said was not taken down. I tried to take down all the material testimony. I exercised great care and took down the answers as nearly in the words of the witness as I could. I don't think I read over Bollmann's testimony to him."

*X by Mr. Nettles:* "There were two examinations of H. Sternberger. I think I read both over to him; he only signed one."

"The corrections (alteration of words) ran through both examinations of H. Sternberger and were made at his instance as read over to him. I think as I said at first that both were read over to him; one follows the other." Again witness said: "As to A. Schafer and E. Iseman's testimony, I have the same to say as in regard to B. Bollmann's." "Schafer speaks indistinctly broken English."

The testimony is too voluminous to make further extracts from it; with my own notes of evidence, it is all in writing and can be taken up if necessary to do so. It consists, besides my notes taken at the trial and the numerous exhibits and books of account, of nearly ninety pages of legal cap, and from a careful and patient consideration of all of it, I have reached certain conclusions, which I shall now proceed to state:

First. The execution of the bond and mortgage by Schafer to H. Sternberger, and by him assigned to Lizzie Sternberger, and by her to Bollmann Brothers, was fraudulent.

Second. The transfer of the same to Bollmann Bros. was without fraud so far as they are concerned, but the three notes made by Lizzie Sternberger and signed by them as accommodation endorsers, were paid by them with her funds as appears by the account current, and at or about the time of their maturity. They were so marked at the time of payment by Bollmann Bros., who had the unquestionable right if they paid them with their own funds, to have cancelled their own endorsements, and to have held them as subsisting claims against Lizzie Sternberger, the maker. Instead of doing this, however, they have marked them paid, and their true and only value now is that of vouchers in their hands, showing the disbursement to that extent of her funds.

The question of application of payments, so earnestly urged at the trial by the counsel for the Sternbergers, is at rest, when-

ever it appears that the application has been actually made by the creditor and acquiesced in, as was done in this case; and notwithstanding the fact that there is a balance still due to Bollmann Bros. on the account with Lizzie Sternberger, such can only appear by striking the same at the foot of the account, and the balance so found cannot be referred to the intermediate items of the notes which had been already paid, and such payment destroyed forever the said mortgage as a security in the hands of Bollmann Bros. "When the brains are out the man must die." B. Bollmann said in his testimony concerning these notes, that when they were endorsed, on March 13, 1882, the several amounts were charged up to Lizzie Sternberger on her account current; that the rule of their house is the same as to endorsements and acceptances.

This does not appear to me to be in conformity with the rule of law upon the subject or with the approved custom of merchants. The relations between the endorser and the endorsee, and between the acceptor and the drawer, are altogether different. In the former it is not the reasonable expectation of the endorser to be compelled to pay. In the latter the acceptor can expect nothing else, for the very fact of accepting implies the possession of funds of the drawer for that purpose, and in such case it is proper to charge up to the drawer the amount of the acceptance—not so, however, in the case of endorsement; and notwithstanding the fact that in law the act of endorsement is an acknowledgment of pecuniary liability to the endorsee, and in order to preserve his credit and prevent protest the endorser does pay promptly and punctually, it is not in his original contemplation to do so.

The testimony of B. Bollmann that these notes were paid with the funds of Bollmann Bros. must be regarded as but little, if anything, more than a mere play upon words, for it clearly appears, from their own entries on the account current, that at the maturity of the two notes first due they were in funds of Lizzie Sternberger by remittances of cash for the exact amounts and at the precise times, and as to the third note that they were at its maturity partially in funds of hers, and soon afterwards fully so. It is most probable that Pelzer, Rodgers & Co., the

endorsees of said notes, were paid with funds of the bank upon the checks of Bollmann Bros. It is needless, however, to speculate upon this point. It is quite enough that the fact appears that Bollmann Bros. were in funds belonging to the maker of the notes.

Third. It is contended by the plaintiffs that Bollmann Bros. should make up to the creditors of Schafer the difference between the appraised value of the stock of goods and the amount realized at the sale. I do not find in the connection that Bollmann Bros. have had with this matter enough to warrant the allowance of this demand, even if there were any proof upon this point to guide me to a satisfactory conclusion. I have already held that the transfer of the bond and mortgage to Bollmann Bros. was without fraud on their part; this, however, should be limited to the fact of *transfer*. They have not been blameless in the use which they have allowed to be made of this mortgage in the hands of E. Iseman. It is certainly extraordinary that, holding an unpaid demand of nearly $2,000 against Schafer, they should consent to his financial destruction by seizing and selling his only means of paying their demand for the purpose of applying all the property of their insolvent debtor, thus made more insolvent, to the payment of the debt of another debtor of theirs whose credit with them is good, and whose means of paying her own debts are not questioned. Besides, the sale of the goods was altogether satisfactory as to prices, and was greatly desired by the plaintiffs; and if Schafer and his alleged allies are capable of committing a tithe of the fraud charged, the plaintiffs should be satisfied with the result of the sale, even had it been at a sacrifice, which they do not pretend is the case. Bollmann Bros. therefore cannot be thus charged, and the measure of their liability in this suit will be fixed when the matter of apportioning the costs comes to be made.

Fourth. As to the alleged partnership between Schafer and the Sternbergers. Upon this point there is a great deal of testimony, much of it tending to show that Schafer was a very facile instrument in their hands; the mercantile books were very inartificially kept; the business was loosely and ill conducted; but I am unable to reach the conclusion that there was any partnership after the alleged dissolution between the parties.

Fifth. As to the purchase by E. Sternberger of the live-stock and wagons from A. Schafer shortly before the seizure of the stock by E. Iseman. The only direct proof upon this point is to the effect that said sale was *bona fide*, and there is nothing to the contrary except the suspicious circumstances of (1) proximity of time; (2) the relationship of the parties; and (3) the final catastrophe. These are not enough to warrant more than a presumption of fraud. The law makes no exception even in favor of strong presumption. The rule is inflexible. Fraud must be proved. It cannot be presumed. The proof is insufficient.

I have thus endeavored to dispose of the various issues presented in this case as briefly as I could to be perspicuous; but at much greater length than I desired. There are very few questions of law in the case, and these are of easy and familiar application when the facts are determined. The counsel for the defendants earnestly insisted that this case should fall within the operation of the principle recently established in this state in the case of *Hirshkind* v. *Israel* (18 *S. C.*, 157), as to the retention of possession by the mortgagor of a stock of goods after condition broken. It could not have been the intention of the court in that case to make of such mortgages a favored class. On the contrary, the retention of possession was held in express terms to be a badge of fraud—a presumption against the validity of the mortgage; but it was as far from the purpose of the court to hold that such a transaction was sacred as that it was *per se* fraudulent. In short, the rule deducible from that case is, that in order to determine whether the mortgage is fraudulent or not, all of the circumstances must be taken into consideration. I have endeavored to do so in this case, and have attained the conclusions above set forth.

It would not be proper, however, to conclude this decree without adverting to the supplementary proceedings hereinbefore referred to. This matter has not been presented to me in such shape as to enable me to pass intelligently upon it. The order of February 23, 1884, under which this suit was instituted, has been already enlarged beyond the scope of said order, which was meant to make up and try the issues as to the validity of the bond and mortgage of November 8, 1881. At the trial, a ques-

.tion was suggested as to Schafer's right to a personal exemption of $500 in the personal property sold, in the event that the conclusions herein expressed should be attained.   Under an intimation from the court that this, with possibly other matters pertaining to the supplementary proceedings, should be more appropriately determined when the said proceedings come up for consideration, counsel desisted, and it is but fair and just that any interest that Schafer may have therein should not be prejudiced by this decree.

In the multitude of matters involved in this case, and the wide range which it has taken, I omitted to state at the proper place in the decree that during the trial a motion was made in behalf of Lizzie Sternberger to amend her answer so as to set up a claim to the assigned bond and mortgage, if it should appear that the notes to Bollmann Bros. had been paid off by her.   The motion was refused for obvious reasons, which I will not here repeat, and her counsel duly excepted.   Reference may be made to the sections of the code upon the subjects, especially section 194, and to *Dunsford* v. *Brown*, 19 *S. C.*, 565.

Wherefore it is ordered, adjudged, and decreed as follows:

1. That the transaction of November 8, 1881, between A. Schafer and H. Sternberger, and the assignment of the latter of the bond and mortgage of Schafer to Lizzie Sternberger, and by her of the same to Bollmann Bros., was fraudulent, and that said bond and mortgage are null and void, and must be delivered up to the clerk of this court, to be by him cancelled.

2. That the three notes of Lizzie Sternberger, bearing date March 1, 1882, payable to the order of Bollmann Bros., at seven, eight, and nine months after date respectively, and aggregating $4,500, have been paid and satisfied with funds of the said Lizzie Sternberger.

3. That the proceeds of the sale of the stock of goods in the store at Little Rock, now in the hands of the sheriff, be disbursed *pro rata* amongst the plaintiffs and such other creditors of A. Schafer as may present and prove their demands before A. Q. McDuffie, master, to whom a reference for that purpose is hereby ordered.

4. That the costs herein be taxed by the clerk of this court

according to law, and when ascertained, that judgments for the same be entered against the defendants, Herman Sternberger, Lizzie Sternberger, and Bollmann Bros.; such judgments against Bollmann Bros. to be enforced only in the event that said costs cannot be made out of the said Sternbergers, or either of them. That in said taxation, costs be allowed to the defendant, E. Sternberger, but not to the defendant, E. Iseman, who must pay his own costs.

The defendants appealed upon the following exceptions:

1. Because his honor erred in permitting to be read and used in evidence in the case, on the ground that the same could be regarded as admissions, certain notes of testimony taken by the master in a supplementary proceeding, in which neither the parties nor the issues were the same as in this action; which notes included the testimony of witnesses not parties to this action, and of parties not so connected as to make the admission of one evidence against the others, consisted solely and entirely of narratives of matters and things past and gone, and were permitted to be introduced and read upon the master saying upon oath "that the testimony taken by him and certified to contained, he believed, what was said by the witness at the time; that his memory was poor, and he could not testify from his recollection what was said, but could say that he took down at the time what was said, or the most of what was said, and the notes contained what he took down."

2. Because his honor erred in entertaining this action, and in holding that plaintiffs had the right to assail "the transactions of November 8, 1881 (to wit: the bond and mortgage of A. Schafer and the bill of sale of H. Sternberger of that date, and recorded November 10, 1881), they not being creditors of either A. Schafer or H. Sternberger at the time, and their claims in this action being against A. Schafer alone, and not dating back further than the summer or fall of 1883.

3. Because his honor erred in holding as matter of law that the defendants, Bollmann Bros., when they paid the three notes of L. Sternberger, of date March 1, 1882, upon which they were accommodation endorsers, and marked the same paid, thereby

deprived themselves of all right to continue to hold the bond and mortgage in question in this action as collateral security.

4. Because his honor erred in holding that said three notes were paid by L. Sternberger with her own funds, and that under the testimony Bollmann Bros. could not be permitted to claim that they had applied the money sent them by L. Sternberger to their unsecured open account against her.

5. Because his honor erred in refusing to allow defendants to introduce evidence to show that subsequent to the assignment of the bond and mortgage in question to Bollmann Bros., there was an understanding and agreement whereby the said bond and mortgage were to be held by Bollmann Bros. as collateral to secure, not only the said three notes, but all advances made, or that might be made, by them to said L. Sternberger.

6. Because his honor having refused to permit the introduction of said testimony on the ground that the same would not be responsive to any allegation in the answer, erred in refusing to allow defendants so to amend their answer as to lay the ground required by his honor for the introduction of said testimony.

7. Because his honor erred in holding the bond and mortgage in question to be fraudulent and void *ab initio;* such conclusion being not only not supported by the evidence, but contrary to the same.

8. Because his honor erred in holding as a conclusion of fact that the assignment of the bond and mortgage in question to L. Sternberger by H. Sternberger was fraudulent and void.

9. Because his honor erred in entertaining the question as to the validity of the said assignment in this action, the plaintiffs not being creditors of either H. or L. Sternberger, and having no right to ask for an adjudication as to the validity of said assignment.

10. Because his honor erred in refusing to permit L. Sternberger to so amend her answer as to claim as her own absolutely the bond and mortgage in question, in case it should be held that Bollmann Bros. had lost their right to hold the same as collateral security, it having been held by his honor that she could not make such claim under her answer as it stood.

11. Because his honor erred in adjudging that the bond and

mortgage in question should be delivered up and cancelled; the same being, under the testimony in the case and the law applicable to the same, even if no longer collaterals in the hands of Bollmann Bros., a valid and subsisting claim against A. Schafer, and the property of either L. Sternberger or H. Sternberger, and because it was error not so to hold and adjudge.

*Messrs. Boyd & Nettles and W. W. Harllee*, for appellants, cited 1 *Story Eq. Jur.*, §§ 199, 200, 203; 9 *Ala.*, 662; 44 *Am. Dec.*, 452; 14 *Ga.*, 207; 58 *Am. Dec.*, 559; *Adams' Eq.*, 176, note; *Pom. Eq. Jur.*, § 968; 13 *S. C.*, 253; 16 *Id.*, 360; 20 *Id.*, 46; *Pom. Rem.*, §§ 566, 670–2; 13 *S. C.*, 23, 401; *Greenl. Evid.*, §§ 111, 178; 9 *Rich. Eq.*, 431; 8 *Rich.*, 292; 11 *Id.*, 52; 2 *Hill. Ch.*, 617; 1 *Id.*, 121; *Jones Ch. Mort.*, §§ 345, 346, 503, 638; 19 *S. C.*, 385; 17 *Id.*, 499.

*Messrs. Johnson & Johnson and C. A. Woods*, contra, cited *Code*, § 312, ¶ 5, 315, 316, 319; *Riddle Supp. Proc.*, 7–9, 52–55, 102, 134, 162, 177, 238; 19 *S. C.*, 565.

April 22, 1885.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    The prominent features of this proceeding, taken from the voluminous "Case," and the statements in the decree of his honor, the Circuit judge, may be presented as follows:

The defendant, A. Schafer, sometime previous to November 8, 1881, was doing business as a merchant at Little Rock, Marion County, under the name, A. Schafer & Co., the defendant, Lizzie Sternberger, and one Wieselthier being his partners.    Sometime in 1878, the two last named retired from the business, and the defendant, H. Sternberger, the husband of Lizzie, took their place, the business still continuing under the name of A. Schafer & Co.    On November 8, 1881, it appears from the papers then executed, and hereinafter mentioned, that H. Sternberger sold out to Schafer for $2,785, payable in two equal annual instalments, the first on November 8, 1882, and the second November 8, 1883, with interest from the date of sale, payable annually until the whole amount is paid.    Upon this sale Schafer executed a bond

in the sum of five thousand dollars, and a mortgage of the stock of goods then on hand, with such other supplies and additions as he might from time to time make thereto in the course of his business, to secure the payment of the purchase money, one of the conditions expressed in the mortgage being that, until default be made, the said Schafer was to remain in possession, with power to sell, renew, and recruit the same, unless the said H. Sternberger, his executors, administrators, or assigns, shall sooner choose to demand the same, and, until such demand, the possession of the said Schafer to be deemed the possession of an agent for the sole benefit of the said H. Sternberger, his duty being to sell, renew, and to recruit the said stock of goods and merchandise, as may be required by, and appertain to, the business of a country merchant, applying the profit of the same to the mortgage debt. This mortgage, after probate, was duly recorded in R. M. C., Marion County, on November 16, 1881. At the time that Schafer executed the bond and mortgage aforesaid, which are the papers now in controversy, Schafer had no other creditor, or at least none other has presented himself. On January 3, 1882, H. Sternberger assigned the said bond and mortgage to his wife, Lizzie Sternberger, at its full value as it is alleged, less 12 per cent., who afterwards, in March, 1882, assigned them to the defendants, Bollmann Bros., as collateral to secure the payment of three notes of hers to the said Bollmann Bros., one for $1,000, one for $1,500, and the other for $2,000. After the execution of these papers, Schafer continued in business at the old stand under the name of A. Schafer, until about the commencement of this suit, and during this time he contracted the debts claimed by the plaintiffs.

In January, 1884, some two months after default of the mortgagor to pay the last instalment of purchase money secured by bond and mortgage, Bollmann Bros., who then held the mortgage as assignees of Lizzie Sternberger, sent up their chief clerk, the defendant, E. Iseman, to seize the stock of goods, who immediately took possession and advertised them for sale, after taking stock. The plaintiffs, becoming alarmed at this state of things, instituted suit before a trial justice, and having shown sufficient grounds for apprehending the loss of their debts, if judgments

were delayed the usual time, the trial justice rendered judgments at a shortened period—all of which was resisted strenuously by the defendant Schafer.

These plaintiffs, immediately after obtaining judgments, made application, based on affidavits, for supplementary proceedings before Judge Hudson, who granted an order requiring the said A. Schafer, Bollmann Bros., E. Iseman, and H. Sternberger, to appear before A. Q. McDuffie, Esq., master for said county, on a certain day therein named, for examination as to the property of the said Schafer & Co, at the same time granting an injunction restraining the said A. Schafer, Bollmann Bros., and E. Iseman from assigning, or in any way disposing of, said property until the further order of the court, upon condition, however, that plaintiffs should give the bond ordered within ten days. Upon the report of Mr. McDuffie, with affidavits, the plaintiffs then made a motion, after notice, before Judge Cothran, for the appointment of a receiver, until such time as plaintiffs could commence action, who, hearing the motion on February 23, 1884, passed an order directing the sheriff of Marion County to take possession of the property and proceed to sell, for cash, on the 26th inst., at the store in Little Rock, at which time and place they had already been advertised to be sold by Bollmann Bros., under the mortgage, and that he hold the proceeds subject to the further order of the court. And he further ordered that the judgment creditors of A. Schafer, for their own benefit, and of all creditors who may come in and contribute to the expenses, have leave to commence their action against A. Schafer, H. Sternberger, L. Sternberger, Bollmann Bros., and E. Sternberger, or any of them, or others as they may be advised, for the purpose of testing the validity of the mortgage given by Schafer to H. Sternberger, and the assignments thereof; and also for the recovery of certain other property alleged to have been placed in the hands of E. Sternberger by Schafer. Whereupon the action below was commenced.

The complaint alleges in substance: 1. That the plaintiffs are judgment creditors of Schafer, with executions returned unsatisfied. 2. That after November 8, 1881, the mercantile business at Little Rock, though carried on in the name of A. Schafer, was

really the business of H. Sternberger, L. Sternberger, and the said A. Schafer, as co-partners, and that the debts due the plaintiffs were contracted under the firm name of A. Schafer, for the firm, with many other debts.   3. The execution of the bond and mortgage in question is admitted, but it is alleged that they were pretensive, and the incipient steps of a scheme of fraud.   Further, that the assignment thereof by H. Sternberger to his wife was without consideration, and for the purpose of fraud.   But if the assignment was valid, the same has been paid so far as Bollmann Bros., are concerned, the three notes of L. Sternberger having been fully paid by Mrs. Sternberger.   That Bollmann Bros. knew this when they attempted to foreclose the mortgage by seizing the goods, which therefore was aiding the fraud.   4. That the defendants conspired to foreclose the mortgage when a full stock of goods had just been brought in, at the expense of plaintiffs and other creditors who furnished the goods.   5. That just before the seizure of the goods, A. Schafer had turned over to E. Sternberger certain property of the value of $300, not covered by the mortgage, by way of preparation and consummation of the fraud intended.

Upon this complaint judgment was demanded: 1. That the bond and mortgage, together with the assignments thereof, be declared invalid, fraudulent, and void.   2. If not invalid and void *ab initio*, that they be adjudged paid and satisfied.   3. That the net proceeds of the sale be paid over to the creditors herein. 4. That defendants, Bollmann Bros., be required to make up the difference between the net proceeds of sale and the value of the goods as inventoried.   5. That it be adjudged that H. Sternberger, L. Sternberger, and A. Schafer are, and have been, partners under the name of A. Schafer, and that plaintiffs' judgments be decreed to have lien against them as such.   6. That the defendant, E. Sternberger, be ordered to surrender the property turned over to him, or to account for its value.   And lastly for costs and disbursements.

All of the defendants answered—some with demurrer, and others by answer alone.   The demurrers, however, were withdrawn, and the case went to trial upon the issues raised in the

pleadings, all of the defendants having emphatically denied the charges of fraud.

As to the alleged partnership between Schafer and the Sternbergers, to use the language of the decree, the judge "was unable to reach the conclusion that there was any partnership after the alleged dissolution between the parties," November 8, 1881. As to the purchase, by E. Sternberger, of the live-stock and other property, said to have been turned over to him by Schafer just before the seizure of the stock of goods, he held that the proof was insufficient to impeach its *bona fides.* As to the validity of the bond and mortgage, he found: "That the execution of these papers by Schafer to H. Sternberger, and by him assigned to Lizzie Sternberger, and by her to Bollmann Bros., was fraudulent." That the transfer of the same to Bollmann Bros. was without fraud, so far as they are concerned, but the three notes made by Lizzie Sternberger, and signed by them as accommodation endorsers, were paid by them with her funds, &c.; and that this payment having been made by the application of such funds by the creditors, any further application was at rest. As to the demand that Bollmann Bros. should make up to the creditors the difference between the appraised value of the stock of goods, and the amount realized at the sale, he held that while Bollmann Bros. were not blameless in the use of the mortgage in the hands of Iseman, yet they were without fraud in the transfer, and therefore this claim could not be allowed.

The appeal of the defendants raises several questions: 1. As to the competency of certain testimony, which will be considered if necessary, as we get further along. 2. That his honor erred in entertaining this action, in which parties who were not creditors of Schafer until some year or more after the execution and recording of the bond and mortgage in question are attempting to impeach them for fraud. 3. In holding said papers fraudulent and void *ab initio.* 4. That he erred in entertaining the question of the validity of the assignment by H. Sternberger to his wife, raised by parties who were not creditors of either, and in holding that said assignment was fraudulent and void. 5. That he erred in holding that Bollmann Bros., even if the three notes mentioned have been paid, could not still continue to claim the

mortgage as collateral to other debts of L. Sternberger, and in refusing to allow defendants to introduce evidence to show that such was the understanding of the parties, and in refusing to permit defendants to amend their answers so as to make such evidence competent.   6. That he erred in ordering the bond and mortgage to be delivered up and cancelled, instead of allowing L. Sternberger to claim under it, if Bollmann Bros. had lost the right to do so.

The main question in the case, and the one around which all the others cluster, is as to the validity of the bond and mortgage. This meets us at the threshold and will be first considered in connection with the subsidiary question, whether these plaintiffs being subsequent creditors with notice can impeach these instruments.   We do not think that the complaint should have been dismissed upon this latter ground.   We mean to say that there is no authority for the position that a subsequent creditor with notice can, under no circumstances, assail a prior deed of his debtor.   On the contrary, we think that this might be done under certain circumstances (*Iley and Wife* v. *Niswanger*, 1 *McCord Ch.*, * 531; *Henderson* v. *Dodd, Bail. Eq.*, * 139, to be more particularly referred to hereafter); and therefore that the Circuit judge was not in error in refusing to dismiss the complaint solely on that ground.

The question, however, now arises, when and under what circumstances can such attack be made by a creditor occupying such a position towards his debtor?   This perhaps will be better understood by considering when and under what circumstances an existing creditor or a subsequent creditor without notice can resort to equity for such purpose.   Deeds and mortgages or other conveyances may be executed by one in debt without consideration and therefore voluntary, and yet be *bona fide.*   Or they may be executed without consideration, with the view to hinder and delay creditors, by putting the property beyond the reach of creditors.   Or, again, they may be executed upon a sufficient and valuable consideration and yet be not *bona fide*, being induced by some benefit obtained by the debtor as the price of the preference given to the special creditor.

Those of the first class are not void *ab initio*, but they may be

avoided afterwards by existing creditors, if, after establishing their debt and exhausting their legal remedies, they find it necessary to resort to the property conveyed on the ground that all of a debtor's property being liable for his debts he must be just before he is generous. It is a misnomer, however, to attach the term fraudulent to such a deed, as such deeds are often made upon the highest and most praiseworthy motives and as absolutely free from fraud as any deed, though based upon the most valuable consideration. But while this is so as to existing creditors, subsequent creditors with notice can certainly have no such right. The property having passed to the donee before the creditor has become a creditor, he can have no claim upon it either in law or morals.

Those of the second class are void *ab initio* as to subsisting creditors with or without notice; but if there be no subsisting creditors, such a case could not arise, as the condition suggested is that the deed be voluntary and made to hinder and delay creditors, which could not take place if there were no creditors to be delayed or hindered. The same may be said as to the last class, because, if there be no voluntary creditors, such a deed and for such purpose could not be made. There is still another principle which applies to all deeds and instruments which are required to be recorded, and this brings in subsequent creditors, the law holding such deeds, if unrecorded, void as to subsequent creditors without notice.

The case at bar does not belong to either of these classes. It does not fall under the first for the reason that the plaintiffs were not existing creditors at the time of the execution of the bond and mortgage, a fact which is not denied. It does not fall under the second or third because there were no existing creditors to be hindered or delayed, and therefore these papers could not have been executed for that purpose. Nor does it fall under the last, because the mortgage was duly recorded, and therefore the plaintiffs had legal notice.

It would seem, then, that where a deed or other instrument has been executed by one not in debt at the time and the deed is founded upon a sufficient consideration, it is invulnerable as to subsequent creditors with notice as well as to all others. Nor as

a general rule can a voluntary conveyance, made under such circumstances, be avoided by subsequent creditors with notice. Lord Hardwicke said in the case of *Russel* v. *Hammond* (1 *Atk.*, 19), "that a voluntary settlement is not fraudulent where the person making is not indebted at the time, nor will subsequent debts shake such settlement." This court, through Nott, J., said the same in the case of *Iley and Wife* v. *Niswanger*, *supra*, and such no doubt is the law for obvious reasons. Judge O'Neall, in the case of *Eigleberger* v. *Kibler* (1 *Hill Ch.*, 121), said: "If he is a creditor at all, he is a subsequent one with notice, and as such he can have no ground upon which he can say that the gift is a fraud upon him, upon the conclusive ground that all the right of the debtor to the property has passed to his donee long anterior to the debt, and therefore that the creditor could have no ground, either legal or equitable, on which he could found a claim for relief."

This, beyond doubt, is the established general rule, but as with most general rules there are exceptions. Lord Hardwicke, in the case of *Stileman* v. *Ashdown* (2 *Atk.*, 481), said: "It is not necessary that a man should actually be indebted at the time he enters into a voluntary settlement to make it fraudulent; for if a man does it with a view to his being indebted at a future time, it is equally fraudulent and ought to be set aside." Judge Nott, in the case of *Iley and Wife* v. *Niswanger*, *supra*, speaking of voluntary settlements, said: "Such a settlement or transfer, I take it, cannot be impeached by a subsequent creditor unless made with a view of future indebtedness or attended with some circumstance of fraud other than what arises from its being voluntary." See, also, the case of *Henderson* v. *Dodd*, *Bail. Eq.*, * 140, to the same point. Before, then, subsequent creditors can attack a settlement or transfer of a party made when not indebted, he must show that the same was voluntary and was made with reference to future indebtedness or prove circumstances of fraud other than what arises from its being voluntary.

Now, the question arises, did the plaintiffs here bring themselves under this principle? We do not know upon what precise grounds the Circuit judge declared the mortgage in question void. He said in general terms that he had reached the conclu-

sion that it was fraudulent, null, and void, and he ordered it on
that account to be delivered up and cancelled.    But whether upon
the ground that it was voluntary, and had been executed with a
view to future indebtedness, or was accompanied with other
insignia of fraud than such as would arise from its being volun-
tary merely, does not appear.    Now, waiving the question
whether these plaintiffs, coming in as acknowledged subsequent
creditors to attack a deed of their debtor made when he was free
from debt, and on that account occupying an exceptional position,
should not have made charges in their complaint of a specific
character warranting such an attack, we are disposed to look at
the case as we now find it and to consider it as if the necessary
averments were in the complaint, applying the principles laid
down above.    First, then, is there any sufficient evidence that the
bond and mortgage were without consideration and therefore
voluntary?    Second, if so, were they executed by Schafer with
the view of future indebtedness?    Or was their execution attended
with circumstances of fraud other than what arises from their
being voluntary?

In the examination of the testimony bearing upon these ques-
tions we do not feel ourselves governed by the usual rule, when
a finding of fact by the Circuit judge is brought up for review,
for the reason stated above, that we are unable to determine
what precise questions of fact were found by the Circuit judge,
as involved in the general finding of fraud.    In other words, we
do not know, from the decree, whether or not his honor consid-
ered this case as one by subsequent creditors, attacking a volun-
tary deed of their debtor made when he was not in debt, and
therefore bound to prove that the deed was voluntary, and that it
was made with a view to future indebtedness, or was attended
with other circumstances, showing a fraud upon such subsequent
creditors; or whether he interpreted the testimony, under the
principles of law applicable to a deed executed with existing
creditors at the time above referred to.    Had the Circuit judge
found upon these questions distinctly, then the rule referred to
would be applicable; but in the absence of such distinct finding,
the questions are open, and we must necessarily draw our conclu-

sions from the entire testimony as original questions. To what conclusions does this testimony lead us?

1st. Was the bond and mortgage without consideration, and therefore voluntary? It seems to be conceded that, early in 1878, A. Schafer commenced merchandising at Little Rock, with L. Sternberger and one Wieselthier as his partners, under the firm name of A. Schafer & Co. This concern continued in business but a short time, a few months only, when L. Sternberger and Wieselthier retired, and H. Sternberger took their place. Wieselthier had put in no capital, but Schafer and L. Sternberger had invested something over $900 each. H. Sternberger bought out the share of his wife at $977.93, as he testifies, just what she put in, when the business continued under the same name until November 8, 1881, when a notice was put up at the door of a dissolution, and the papers in question were executed, and Schafer continued thereafter in his own name. Judge Cothran has found that there was no partnership after that date.

Now, in the face of these facts, of which there is positive testimony without contradiction, can it be said that the bond and mortgage had no consideration? Before the dissolution H. Sternberger had an interest as partner; after the dissolution A. Schafer retained possession of the entire stock, and executed the bond and mortgage, H. Sternberger having executed to him a bill of sale of his interest in the goods, &c. There is no intimation from any quarter that, before November 8, 1881, Schafer was sole owner. He was sole owner, however, immediately afterwards. How did he become so, except in the transaction referred to? For what other reason could these papers have been executed? They certainly on their face consummated a sale of H. Sternberger's interest, if he had any, and in the absence of all testimony showing that he had no interest, we must conclude that there was a purchase by Schafer, which constituted the consideration of the bond and mortgage. It is true the sum agreed to be given was not clearly explained. There was some confusion as to the mode of ascertaining this amount; but whether it was too much or too little, how could parties, who were not creditors of either at the time, complain?

These papers, then, having been founded upon a considera-

tion, and there being no existing creditors interested, is not that an end of the case? Is there any law which allows subsequent creditors with notice, to attack, and set aside for fraud, a conveyance founded upon a consideration satisfactory to the parties, and made at a time when the grantor was free from debt? We know of none. The ground upon which such conveyances are subject to attack, either at common law or under the statute of Elizabeth, or under the recent assignment act, is that some unlawful preference has been given to some creditor; but how can there be a preference when there are no creditors?

Assuming, however, that we are mistaken in the conclusion that the bond and mortgage were based upon a consideration, does the testimony show that they were executed with a view to future indebtedness by Schafer, or was the execution attended by any other circumstance showing fraud? We do not well see how there could have been any view of future indebtedness by Schafer. The mortgage was immediately put upon record in the proper office, and the proper county. There was no evidence of any concealment. An advertisement was posted on the door of the store, that a dissolution had taken place. There is nothing whatever, in the testimony, showing that Schafer was preparing to enlarge his credit, by contracting new debts in the future. On the contrary, by the terms of the mortgage, which covered not only the stock on hand but all subsequent accretions, and which was published to the world by its record, it would rather seem that he could not have expected to buy in the future on a credit, with no property himself, except that covered by mortgage, and with a statement put upon a public record that all he might acquire afterwards would also go under this mortgage, and be first liable for its payment. If he was preparing for future indebtedness, and fixing a trap for his future creditors, he certainly neither screened its entrance, nor enticed them by any device to walk in; and if any have been deceived and caught, they can hardly lay the blame on the mortgage.

Were there any circumstances attendant on the execution of the mortgage showing fraud? We have found nothing unusual in connection with this execution. It was properly attested, and was probated on the same day, and recorded within a few days

thereafter. There was a good deal of testimony as to Schafer's conduct about the time, and a short time before the seizure of the goods by Bollmann Bros., in reference to the house being built on the store lot, the paints and other materials for this house; but all this was a year or more after the execution of these papers, and while they reflect upon Schafer and the Sternbergers, with reference to these matters, they have no reference to the question now under discussion. And there is some suspicion, too, growing out of the rapid and frequent change of partnerships, transmissions of goods and books and accounts from Darlington to Little Rock, back and forth, varied with the assignment of these important papers, first from H. Sternberger to his wife, Lizzie, and from her to Bollmann Bros. But when all this is fully analyzed, we have not been able to find sufficient evidence upon which to say that the bond and mortgage were executed without consideration, or with the view to future indebtedness, or with attending circumstances showing fraud upon these plaintiffs, who were not then in existence as creditors. Therefore we think there was error in the finding of his honor below, that they were fraudulent and null and void.

As to the assignment of these papers by H. Sternberger to his wife, and by her to Bollmann Bros. Since we have reached the conclusion that the evidence is not sufficient to invalidate said original papers, as between Schafer and H. Sternberger, we cannot see how the plaintiffs, who are neither creditors of the Sternbergers nor of Bollmann Bros., can have any interest in the question. The creditors of H. Sternberger existing at the time of the assignment to his wife, if any, might be interested, but how the creditors of Schafer could call in question the transaction is not apparent.

Nor, in that view, does it make any difference whether the notes of Lizzie Sternberger given to Bollmann Bros., and which were secured by her assignment of the bond and mortgage as collateral, had been paid by her funds, or the funds of Bollmann Bros.; because, whether paid by the one or the other, the mortgage would still exist. Nor can the plaintiffs complain that Bollmann Bros. have attempted to enforce it. They are in possession, and whether thus in possession as a security for the money

which they claim to have paid to Pelzer, Rodgers & Co. on the notes, or as security for the accounts against Lizzie Sternberger on their books, might be a question for Lizzie Sternberger, but she is before the court and does not deny the right of Bollmann Bros.

The Circuit judge found that there was no partnership existing between any of these parties after November 8, 1881. This finding has not been appealed from by the plaintiffs; therefore the question urged in argument, that the claims of plaintiffs should be established against Schafer, H. Sternberger, and Lizzie Sternberger, is not before us. Nor can the more serious question, whether under the terms of the mortgage Schafer was not in possession simply as agent of H. Sternberger, and therefore all debts contracted by him in filling up the store were Sternberger's debts, be properly considered by us.

The plaintiffs taking the other view that these debts were Schafer's debts, and that the property embraced in the mortgage was Schafer's property, have sought to brush aside the mortgage and to enforce their claims established against Schafer through the property which they claim to be his; and it is too late now in this proceeding to change front and make a new attack.

If there was any undue haste, or any suspicious delay on the part of Bollmann Bros. in seizing the property, or any purpose to sacrifice it at an inauspicious sale so as not to reach beyond the mortgage to plaintiffs' claims, such object has been met and thwarted by the order of the Circuit Court putting the property in the hands of an officer of the court and ordering the sale to be made by him. This, under the circumstances, seems to have been proper, and should not now be disturbed. The proceeds of sale are now in the hands of the court, and should be paid out— first, in satisfaction of the mortgage; and then, if any over, to be distributed *pro rata* amongst the plaintiffs and such other creditors of A. Schafer as may present and prove their demands under the reference ordered. And to this end the judgment below in conflict with this should be reversed.

It is not necessary to discuss the question as to the competency of certain testimony admitted by the Circuit judge or any other than those already passed upon.

It is the judgment of this court that the judgment below be reversed, except as to the reference ordered, and that the case be remanded to be carried out in accordance with the opinion herein above.

MR. JUSTICE McIVER concurred.

MR. JUSTICE McGOWAN. I cannot concur in this judgment. As the facts impress me, the Circuit judge reached the equities of the case. I consider that the firm which did business at Little Rock as A. Schafer & Co. was never actually dissolved, but in reality continued to be the firm of A. Schafer and H. Sternberger, and that the bond and mortgage to Sternberger for his alleged interest in the concern were pretensive, fraudulent, and void as to subsequent as well as subsisting creditors. Indeed, in the view that there never was in fact any dissolution, there could not be in the proper sense of the term any subsequent creditors. The property covered by the alleged mortgage was "a stock of goods," which, by the express authority of Sternberger, the alleged mortgagee, was being changed every day by contracting new debts for new goods. I cannot agree that these new goods so purchased shall go to the old claim of Sternberger, to the exclusion of the very debts contracted in their purchase.